I'll start with the first case, Kerson v. Vermont Law School. Your Honor, is it just a question about technology? Is Judge Cabranes visible to me, or... No, he'll be proceeding telephonically. Oh, okay. Your Honor, is this case involving Vara, the visual arts rights activist, and Samuel Kerson, an artist? There is something fundamentally wrong in the circumstances of this appeal. Congress enacted Vara for the express purpose of engrafting into our copyright law the moral rights doctrine adopted by the Berne Convention to protect artists against modifications and destruction that are prejudicial to their honor, or reputation, and to establish a climate of artistic worth and honor that encourages the author, as they state, in the arduous act of creation. And I feel that this Court has long recognized from the cases of Carter v. Ellenslee and recently reaffirmed in Castillo. Yet today we are faced with a decision by a District Court judge that has sanctioned Vermont Law School's intent to permanently cover and wall off two murals, eight by 2014, which were incorporated into case law at the request of Vermont Law School and have been there since 1993. Vermont Law School commemorated their opening and participated in and had the murals celebrated when they were opened. And the murals, of course, are of the Underground Railroad and Vermont's participation in it. Somehow these murals, over the years, have now somehow become deemed to be offensive and unworthy of public display. How under the statute is removing a work from public display a modification or destruction of the artwork? Your Honor, modification is a word used in the statute that is two-pronged. One, we know that modification itself as used in the statute is a specific thing that will allow for any type of change to the art. And the key second prong of modification is that it is a modification that causes prejudice to the honor and reputation of the art. So can I ask, I mean, just staying on that, how is the art modified by being covered? I mean, I guess I get the environmental changes and maybe we can set that aside for a sec, but just the concealment of the art, how does that modify the art? It modifies it because it covers it. And the act of covering it is a modification. So that, Your Honor, you have a mural that is displayed. You have a cover that is being put on section by section. And each one of those sections modifies the art and then covers it so that it can no longer be seen. What's the definition of modification that encompasses concealing it? Just is there a definition of modification? Modification means what? Modification itself is, in the statute, can be lighting, placement. It is not necessarily that it physically touched the art. It is that the art, in its visual form, is being affected. And it is being affected to the prejudice of the art. What about taking down the art and putting it in a closet? So I know you can't do that with this art, but it's a gallery, the gallery takes it down, you can no longer see it. Is it modified? Your Honor, that is a specific understanding by Congress in the statute that art that's movable can be moved and that art that is fixed cannot. And the fact is that the murals here are fixed. They are set into the building and they are covered by 113. There is a significant difference in the statute as to how movable art is treated and how fixed art is. But that exception is about moving without modification and your theory is that when you cover the art you are modifying it. That is a modification. That is correct. It is a form of change to the art. And under 113, it is, you know, the modification is the removal from display. And removal from display is key to 113. 113 itself says that you either remove it without damaging it or you get a waiver. There is no waiver here. And the fact that you have a mural with that fixed with a cover, the fact is, as I was thinking about this, the difference between moving art and keeping it in place is significant. In one place, you are taking the art, which you can do, and move to a box. On the other hand, you are here bringing the box to the art and covering it up so that it is seen. Art that is moved and movable, we agree with. But in the fact of this 113, you have a very different environment. One other point that has to be made with 113, the artist in 113 gets his art back if it can be removed from display. In movable art, no such thing. An artist has no right for the art hanging on the wall being moved. But if art is removed, he gets it back so he can show. What they have been able to do by covering it is they have prevented him from getting his art back, which would be his right if it could have been done. Instead, they have put it in a cupboard. But an art that is hanging on a wall, the artist has no right to get the art back, has no right to what can be done with it specifically. Do you agree that we do have to accept  for your client to prevail? We have to decide that this is a type of modification, even assuming covering works no physical change to the artwork at all. Your Honor, there has to be an understanding that modification includes something that does not touch the art. But I believe the statue itself, as it is written, uses modification in just that way. It's a general catch-all phrase. If we were talking only about touching the art, the word would be damage, not modification. Modification is something that can be broadly construed and intended to be because even the legislative history tells us that modification that does not affect the prejudice and honor of the artist is not going to be part of the case. But here, we have certainly clear prejudice and damage to the reputation of Samuel Kurtz. Thank you, Your Honor. This is Judge Kabratz. Can I ask a question? Can you hear me? Yeah, I can hear you. Hello. This is Mr. Hyman, is it? Who is arguing? That's the appellant's counsel, sir. I understand. What's his name? Is it Mr. Hyman? Mr. Hyman, yes. Go ahead. Yeah, I want to address him. Mr. Hyman, explain to me, explain to us mechanically just what is it that would be done or has been done. That is, what does the covering consist of? Was there any opportunity, is there any opportunity for periodic or occasional opening of the cover? The art, Your Honor, is specifically stated by Vermont Law School to be permanently covered so that it will, as they state, will not be accessible to students or visitors. So the art is completely covered. Is that at any time? In other words, I can easily imagine a shade of some kind. It is not a shade, Your Honor. It is a permanent, fixed wood frame with panels anchored over it so there is no way for it to be seen and that is the express purpose of the school, that it not be seen. So I take it that it can not only not be seen, it can never be seen, is that right? That is correct. Under any circumstances? That is correct. There are no circumstances under which the covering can be removed or opened temporarily? That is my understanding, Your Honor. We have, it is anchored, I mean anchored, and therefore not viewable under any circumstances. Let me ask a follow-up question to my, from my colleagues. When you say it is designed to be permanent, but it is not touching the mural and if a decision was made to take it down, it could be removed. Am I correct in understanding? I do not know that I need anything to be moved and not moved ultimately. Is a wall that is built can be taken down? I assume it can be. But how does that deal with the fact that we are covering it? If we are looking just as to whether or not it touches the art, I think we are missing in part the focus and meaning of that. I mean, having that wall is a change of fixed art and it is not dealing with placement, it is not dealing with lighting, it is dealing with the specific covering of the wall of the art so it cannot be seen because it is deemed now to be offensive. I would note that, you know, they did not have to build a wall. They could have had a waiver and at the very, if this law school knew the law when it was having the art put on, it chose the time, place and manner of that art and it had the ability to have a waiver to do what it wants to do. But now it is permanent and we covered it. Judge Cabranes, did you have any follow-up questions? No, but I have the same question for counsel for Vermont Law School. When that counsel begins arguments or at some point, I would like to have a better idea of precisely what the structural situation is or can be. All right, we'll hear from Vermont Law School. My name is Justin Barnard and I'm counsel for Appleby, Vermont Law School, which now goes by the name of Vermont Law and Graduate School, referred to by that name today. The Visual Arts Rights Act occupies a somewhat peculiar place amongst U.S. laws given its uneasy relationship to traditional American conceptions of property rights. Thus, it's not a big surprise that when Congress enacted the act and chose to bring the European doctrine of oral rights to these shores, it did so in a carefully crafted manner that extended the limited slate of rights to artists and was careful to adopt exemptions that would prevent the law from sweeping too broadly and would preserve normal practices in the ownership and protection of art. As this court said in the Carter v. Helmsley Spear case back in 1995, it certainly wasn't Congress's intent to mandate preservation of art at all costs and without due regard for the rights of others. But the position that Mr. Carson has taken in this appeal and in the district court proceeding below is pretty firmly at odds with that limited legislative project. Mr. Carson would ask the court to read into Vera a prohibition that appears nowhere in its plain text and that, I think without question, would trample upon the rights of private individuals and entities to decide whether or not to continue to display works of art in the private spaces. So there are two interpretive questions here. We only raised the first in Mr. Hyman's argument. I want to make sure I touch on both. And I'll also touch on the question raised by Judge Kronis. It'll start there. The cover at issue is it's a wood frame that doesn't touch the mural. It sits outside of the mural and is fixed to the wall at some distance from the painted surface of the wall. And it suspends over the mural at a distance of roughly two inches a set of acoustic pins. So it does not touch the work at all. It did not do any injury to the work as it was put on. And it is indeed BLGS's intent to leave it up permanently. If there are no bones about it, BLGS wanted to remove this work from display. Could it be removed? Absolutely. It's a structure that could be removed and the mural would be on view once again. So I'm happy to answer any questions about that factually. But I want to... Yes, let me... Hello, hello. On that question, how easy is it to do that? On what kind of occasion would that occur? Your Honor, it is BLGS's intent that it never occur. It is intended to leave this wall up at least for the rest of the artist's life which is, of course, the length for which the rights under there are run. So it is certainly hypothetical. If a different administration came into the school and made a different choice, could it reverse course? It could. But I think this gets to one of the... But your... Apologies. What you're saying is that it's effectively destroyed. It's not actually destroyed. It is destroyed for all visual purpose. I would respectfully disagree with you, Your Honor, on two counts. First of all, the statute refers specifically to destruction of the work. I do not believe you can read destruction to mean cover because you can uncover the work. Is it no longer available? Yes, but it's no longer available for view in the same way that it would be if this were a framed painting and Vermont Law School put it across. An artist doesn't have a right to insist upon their art remaining in view. I also think that if you look at the type of injury against which Vera protects, there is a difference in kind to the injury felt by society and by the artist when a work is destroyed and when it is simply no longer put on display. Do you think, to take a somewhat extreme example, of the 6th Century Statutes of the Buddha that the Taliban blew up in 2001 to dismay and shock around the world, I think we'd feel very differently about that course of action if the Taliban had put a wall around them and prevented anyone from coming and seeing them. There is a unique harm felt when you destroy something and remove it from the face of the earth. That is not what we're talking about here. We're talking about simply the right of a private institution or a private individual to remove a work from display. Can I ask you about the public presentation exception and how that fits into your conception of modification? I would have thought, just viewing the word modification alone, I think I would have defined it the way the district court did in this case. The thing I'm wondering about with the public presentation exception is it seems to suggest that changes to presentation are modifications of the work because it has a carve-out that says except under certain circumstances when we're not counting them. So I guess I'm wondering if the takeaway from the public presentation exception is a change to presentation is a change of the work unless the carve-out applies. And if so, why is this a change to presentation? I think, in order to get to the exception, you first start with the prohibitions. And I don't think you can read modifications in the word cover. But looking at the exception itself, when you remove a work from display, number one, you know, I don't think it's modified. It's no longer there. I guess, just maybe, I mean, I think I'm not being very clear, but the existence of the public presentation exception that says in certain circumstances when you change the public presentation, we're not going to count it as a modification. It suggests in other circumstances where you change the public presentation, it does count as a modification, right? I mean, I guess the existence of the exception suggests to me changes to presentation generally count. I think you could read it as trying to catch examples where changes to presentation might count as a modification, but also to confirm the limited scope of the prohibition, that it won't extend. And you see that in the other exception, the exception to changes that result from the passage of time. I think that there's a reading in the statute that would already exclude changes that occurred due to the passage of time from line, bill, matter, and barrier. But Congress made it clear that those sorts of changes lay outside the scope of the statute. I view public presentation exception the same way. And I would also point out that in the legislative history, in the bill that both parties, sorry, the House report that both parties decided, the Congress made clear that this public presentation exception was intended to apply to the decision to remove a work permit. So, I think that it does partly apply, but I also don't think the Court needs to get there because I don't think covering is itself a modification. Modification implies that something is left that is in modified form, so you are perceiving it differently. And that's the way that modification has been used generally in other contexts. Well, what do you, because I had the same question, what do you, how do you interpret modification as used in the public presentation, modification as a result of public presentation, including lighting? Because the exception clearly suggests that the way you light something could modify it, and that if the exhibitor is grossly negligent in that regard, you could fall within the statute. So what does modification mean in that context? I think that it's beyond question that you could modify something by changing the way that it's lit. And that there are ways you can modify a work without doing physical, without physically altering it. But again, I think once you remove something from view, there's nothing that is left to be modified. I guess it seems like you've agreed, though, that modification isn't just an incremental physical change to the art. It's not just an incremental physical change. I think it is an incremental change. There has to be something left that you can say has been modified. If you're looking at a blank wall, the artwork has been modified. And to be clear, the statute refers specifically to intentional modification that reflects on, in a prejudicial sense, on the hardness on a reputation. Well, but then it says any intentional distortion, mutilation, or modification violates that right. So I'm not sure that's scaring you anything more. Well, to the extent that you're suggesting that there is no requirement of prejudice in that second prong, the First Circuit is exempt from that. I point you to the mass voting decision where the courts looked at whether you have to show prejudice in that second prong to get an injunctive relief and found that that is the only reasonable reading of the statute. I see that I'm nearing the end of my time, but I'd like to briefly address the second piece. Yes, please. So, Mr. President has also argued that the fact that this cover may create environmental conditions that could over time lead to the destruction or, sorry, the deterioration of this mural entitles him to an injunctive. That necessarily presumes that there is some affirmative art preservation obligation under there. The record is clear that there was no injuries to the work when, or no expected injuries to the work when the cover went off, so there's no contemporaneity. This is something that happens over time, and Mr. Carson's view is, you know, there is a risk that there will be deterioration, and also knowing that now, you know, it is at least personally negligent as to that risk, and he's entitled to a judgment. The problem there is that Congress specifically looked at imposing this sort of standard in the statute and did not use it. The original test of the exception for changes that occurred due to the passage of time marked out changes that occurred due to the passage of time that were the result of gross negligence in the protection or maintenance of the work. That's essentially his argument. Can I just ask, I mean, it seems like what you've got here is passage of time plus, right, you've got passage of time as one component that contributes to the damage on plaintiff's theory, but then you've also got affirmative actions by you. It's not just you didn't do anything to the art and so it decayed. Then, obviously, the exception's going to apply, but you've got passage of time plus affirmative acts by you, and so I'm wondering how you know that that's subject to the passage of time exception. So for two reasons here, number one, I think you're going to have that in every case. You know, an artist is always going to claim you should have not hung my painting on a wall with a lot of sunlight because everyone knows UV radiation is going to degrade the painting. You should have taken some other step to preserve my work. It is not simply passage of time. It's how you treat my work and expose it to an increased risk. And I think if you look at the fact that Congress explicitly considered this language about corrosive languages and preserving the work, they clearly had in mind that it wasn't just the fact that the painting sits, you know, for decades and ages. It's that someone's going to need to treat artwork in a way that exposes it to an increased risk. And once you go down that road, I mean, that's a much bigger intrusion on private property owners because you open up private property owners to suits by artists who say, you know, you put my art in an uninsulated pad, you put my art in a room with a fireplace or a wood stove like many of us have come from while I exposed it to ambient stuff. That's clearly going to have an effect on the art, so I'm entitled to an injunction. Congress did not impose liability under those circumstances and that is exactly what Mr. Kirshner is arguing here. Thank you, Your Honor, for indulging me. Give me one more time. Judge Cabranes, did you have any follow-up? Yeah, I do, and counsel, let me begin by saying that you may indeed prevail here on the law, but it does seem to me, as an innocent observer, that Vermont VLS went to furious extent to make sure that this work of art was never seen again. It seems to me that, I'm just sort of curious as to what kind of decision making goes on in a situation like this. I'm not suggesting that you're not going to prevail here, I'm just curious as to why your client would not simply opt for a solution that would give the artist this work of art. There are any number of which can occur to all of us other than the permanent erection of a cover. Can you explain what the general theory of decision making was here? What was the idea here? I can do my best, Your Honor. So, just to be clear... That's all you can do. Thank you. Just to be clear, VLGS would have been happy to give Mr. Hurston his artwork. They gave him a chance to come and see if it could be removed. His carpenters who looked at it said, they can't be removed without damage, and you're required to keep it up full stop. There was some discussion of whether a curtain might be put in place, but there's nothing under there that would allow a court to say that a curtain is okay, but a wall is not. That's going down pretty slowly. I will say that this was... Hold on. That may be and seems to me a very practical solution to the problem. I understand that, Your Honor, and I will say that this was a decision that was not simple for VLGS. It took time, and this has been an issue that's been percolating over the years and we've received it in the record. There have been complaints about this work for years, and Vermont Law and Graduate School ultimately determined that this was the appropriate solution, that if there were a curtain, that would still be felt as a distraction, and I think the fact that there is so much attention to this decision and that it invocates such important and hard-fought issues around academic freedom and speech and expression, just points out the fact that this is the sort of decision that should be left to a private institution to make and not the courts. Okay. Thank you very much. Your Honor, the covenant with your question about modification, I think, is critical, and they now concede, as we have argued, that modification need not be the touching of the art, that other things can impact on modification, and the critical issue for this Court is whether the covering of the art, whether it's complete or not, is not necessarily the issue. Is the covering a modification that's permitted? We argue it is not. It is because once you deal with the issue of modification, you now have to deal with the issue of prejudice to honor and reputation of the artist. And once you get to that, the covering of a fixed mural that is on display for the purpose of preventing people from viewing it is a modification, as the statute says, that's prejudicial to honor and reputation. The other point is that VARA is really... Vermont Law School has taken the position that we can't remove it because it is going to be damaged under the statute. Therefore, we are going to do something to hurt the artist even more. We're going to put a cover on his art so we can't have it back and it can't be seen. It's gone. But that is the purpose of benefiting the artist. How... All Vermont Law School had to do is put the artist on notice when it was painted that he had a... They wanted the right to do with that art what they could. And they failed to get that. And because they failed to get a waiver, Sam Kersen's art can't be moved. Everyone agrees. He must suffer the indignity and the humiliation of having a panel put over his art. And I just want to remind the Court that we call it a wall, but it's not a wall. Really, it's a panel that covers the art. So anyone walking into that room will see panels over something. And under that is art. And that, we submit, is a modification. Thank you. Thank you both. And we'll take the matter under advisement. Nicely argued.